The PEOPLE of the State of
Colorado, Complainant,

v.

Raymer Martin RHODES, II,
Attorney–Respondent.

No. 90SA255.

Supreme Court of Colorado,
En Banc.

Jan. 14, 1991.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Deputy Disciplinary Counsel, Denver, for complainant.

No appearance by attorney-respondent.

PER CURIAM.

The respondent in this attorney discipline case was charged with conduct involving dishonesty, fraud, deceit or misrepresentation; neglect of a legal matter entrusted to him; intentional failure to seek the lawful objectives of his clients; and intentional failure to carry out a contract of employment. The respondent was also charged with failing to cooperate with the Supreme Court Grievance Committee without good cause shown.

The respondent did not appear or answer the complaint, but he did testify by telephone to the hearing board with respect to grounds for mitigation. The hearing panel approved the recommendation of the board that the respondent be suspended for one year and one day, and be assessed the costs of the proceeding. The respondent has not excepted to the findings or recommendation of the hearing panel. We approve the recommendation of the hearing panel and conclude that the seriousness of the respondent's misconduct warrants suspension for a year and a day.

I

The respondent was admitted to the bar of this court on October 17, 1980, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court. C.R.C.P. 241.1(b).

Because the respondent did not timely appear or answer the complaint, the facts and the charges in the complaint were deemed admitted by virtue of the entry of a default. C.R.C.P. 241.13(b); *People v. Trevino*, 803 P.2d 473, 473 (Colo.1990); *People v. Richards*, 748 P.2d 341, 347 (Colo.1987). The facts found by the hearing board are as follows.

Edwin and Elizabeth Kaime sold four parcels of land in Durango, Colorado, to Arizona land developer Niles Thim. The Kaimes took back a note and deed of trust on each of the parcels. The respondent prepared the documents and represented the Kaimes at the closing.

On January 22, 1987, the Kaimes met with the respondent to discuss filing suit against Thim individually on one of the notes that had been recollateralized, and to reserve foreclosing on the remaining three deeds of trust until after the May 1987 payment deadline. The respondent agreed to proceed against Thim, and indicated that he would have Thim served. On February 17, 1987, the Kaimes stopped in at the respondent's office to see if Thim had been served. The respondent stated that Thim had not been personally served, but he implied that Thim had been served through a local attorney. The respondent also said that he would be meeting with the local attorney to discuss the matter.

The Kaimes repeatedly telephoned the respondent in March and early April 1987 without success, and the respondent failed to return any of their calls. They finally reached the respondent on April 8, 1987, and he stated that there had been several postponements of his meeting with the other attorney. On April 14, 1987, the respondent told the Kaimes that he would check with the sheriff's office regarding the service on Thim.

The Kaimes met with the respondent on April 27. He said that Thim did not have

to be personally served, but that the process server could leave the documents at Thim's place of business. Three days later, the respondent told the Kaimes that the summons, complaint, and notice of deposition had been "sent" on April 17, 1987. On May 27, 1987, the respondent informed the Kaimes that he had received notice that Thim had been served on May 14, 1987, and that they could receive a judgment in thirty days.

The Kaimes retained another attorney on June 1, 1987, and wrote to the respondent, discharging him. On June 24, 1987, the Kaimes learned that Thim had filed for reorganization under Chapter 11 of the Bankruptcy Code. In July 1987, after reviewing the files they received from the respondent, and checking with state and federal courts, the Kaimes determined that the respondent had filed no lawsuit of any kind against Thim.

On September 1, 1987, and again on September 8, the Kaimes asked the respondent to send them an itemization of his billing, and a copy of the complaint and return of service concerning Thim. On September 28, 1987, the respondent told the Kaimes that a copy of the complaint was contained in the files he sent to their new attorney. No copy of the complaint was found in the files the respondent sent.

After a request for investigation was filed, the grievance committee requested the respondent to file a response. The respondent did not file any response to the request for investigation, and he did not timely appear or file an answer after the complaint was filed by the assistant disciplinary counsel. The respondent did testify by telephone at the hearing before the board regarding factors in mitigation, and he requested that the board allow him to submit written materials in mitigation. The board granted the respondent's request and gave him two weeks to submit written material in mitigation. The respondent, however, failed to submit any additional materials.

## II

The hearing board found, and we agree, that the respondent's conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him); DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means); and DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment). In addition, because of his unexcused failure to cooperate with the grievance committee, the respondent violated C.R.C.P. 241.6(7). Finally, by virtue of the above misconduct, the respondent also violated C.R.C.P. 241.6 (grounds for attorney discipline), and DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule).

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), in the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *ABA Standards* 4.42. Suspension is also appropriate when a lawyer knowingly deceives a client and causes injury or potential injury to the client, *ABA Standards* 4.62.

We find that the following aggravating factors are present: (1) a prior letter of admonition on March 19, 1989 for failure to cooperate with the grievance committee, *ABA Standards* 9.22(a); (2) an unexcused failure to cooperate with the grievance committee, *ABA Standards* 9.22(e); (3) the respondent's refusal to acknowledge the wrongful nature of his conduct, *ABA Standards* 9.22(g); and (4) the respondent's substantial experience in the practice of law, *ABA Standards* 9.22(i).

In mitigation, the respondent testified that he did not "intentionally" mislead his clients and that the failure to file the lawsuit and "miscommunication" was due to his too heavy caseload. The board found the respondent's testimony that he believed a complaint had been filed inconsistent with

his testimony that he had never signed the complaint. The respondent's repeated lies to his clients regarding the status of their case raised his inaction to an even higher level of misconduct.

We note that the respondent has filed no exceptions to the hearing panel's recommendation of appropriate discipline. We conclude that the seriousness of the respondent's misconduct, in conjunction with his failure to cooperate with the grievance committee and his default in these proceedings, warrants suspension for one year and one day. *See Trevino,* at 474; *People v. Hodge,* 752 P.2d 533, 536–37 (Colo.1988). One member of the court would favor a more severe sanction.

### III

It is hereby ordered that Raymer Martin Rhodes, II, be suspended from the practice of law for one year and one day, effective thirty days after the issuance of this opinion. C.R.C.P. 241.21(a). It is further ordered that Rhodes pay the costs of this proceeding in the amount of $161.36 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202. Rhodes shall not be reinstated until after he has complied with C.R.C.P. 241.-22(c) & (d).

MULLARKEY, J., does not participate.